Sanseviro v. State of New York. Good morning. Good morning, Your Honor. Good morning. Your Honor, Robert Laradola, Laradola Western Associates. I represented Mr. Sanseviero in the matter below and here today. Your Honors, the decision ignored the politics of the case and the lack of any prior convictions under either statute. Well, the politics in this case are irrelevant, Your Honor, because the law had never been tried before and the convictions were new. The law had never been tried to apply in this way. Judge Kathleen Rice mentioned at the get-go and has always admitted this was a new application of the law. She said so in her deposition with me, JA 584. Well, not only was it a new application of the law, it was also different as had been before for 17 years in the State of New York. Well, she had to have, well, probable cause is going to be measured at the time of the rights. There either was probable cause or there wasn't probable cause. There either was arguable probable cause or there was not and it doesn't matter what the politics were. Well, Your Honor, in this case, we believe that there was also press releases that were going out describing my clients as having committed being dealers in death and things like that. I've not made myself clear, but I'll stop. On the malice issue, Your Honor, we believe that these are relevant subjects. One of the areas of law in the court below was reliance on 400.0012. It does not apply to rifles. The court mistakenly applied a handgun section to rifles. The statute describes exempt persons. Exempt persons are handguns carried on the badge by police, not rifles. If the court needs any clarification, the error begins with Bennett's email to Richard Aborn and we would ask ourselves, can a reasonable police officer confidently go to Richard Aborn, the head of Handgun Control, Inc., on a new question of law? Well, the more you argue that this is a law that is rarely if ever applied, the easier it becomes for the other side to argue least qualified immunity, right? Your Honor, we believe that qualified immunity, or under the theory that was proposed, requires some probable cause, not zero probable cause, and here if you look at the affidavit in support of the arrest warrant, it's only legal conclusions. These were stores that had been operating lawfully for 17 years with advice from the state in Albany that their conduct was lawful and that were going about their business that found themselves being videotaped and then arrested. So when the court indicates they're misapplying the handgun statute in the first instance, but in the second instance, which Your Honor is pointing to, yes? I hate to have to say this, but it must be my age. You talk at a rate of speed that basically defies comprehension by me. Could you slow down? Of course, Your Honor. Thank you. The second issue related to the only other charge that could be sustained under this change in law theory, the 180-degree change in law, would be the penal law section 26522A change. The 400 statute could not be valid. It does not apply to rifles, but the 422A, if we were believing that the police could be reasonable in modifying... Just a minute. What is the theory on which 4000012 applies only to rifles? What language are you referring to? The term firearm. And firearms is defined in the statute somewhere to mean only rifles? Yes. Penal law section 400 is a handgun statute. It's not a... Handgun. Now it's a handgun statute. Pistols, Your Honor. They use the term pistols. And where is it defined? Where's firearms... It's in the section 400.00. I don't recall the number, but this is, if you look at the email related to Bennett, Bennett describes trying to apply this in an email that went to Aborn. So they really were not sure of the law when they brought this case. So how reasonable can it be to rely upon someone who is hardly a neutral? But on the issue that could have been argued to have reasonable probable cause, which is 265.0022A or D, is it reasonable to believe that household tools or readily reversible by household tools is going to be an objective standard, Your Honors? What tools? What tools are in my house? What objective standard there would be something measurable? And did the Police Act, like reasonably prudent police officers in only testing two of the guns out of 15 that they claimed to be readily modifiable, not to use any scientific measures? The Nassau County DA has a lab. The state troopers have a lab. They have a Tech Sergeant Hurt who testified... The barrel threaded? The barrel was not sold with the threads exposed. That's the whole issue, Your Honor. Those parts... It was threaded, right? They're all threaded, Your Honor. They're threaded at both ends. Mine isn't. Your Honor, the rifle can be removed by pins, and we saw a video of the police struggling to remove the top when it would have come off easily with the pins. For arguable probable cause, you have to be able to avoid arguable probable cause. You have to be sure that no reasonable officer would have considered the modifications as sufficient, would have understood these changes to be sufficient. Well, we asked Investigator Frank, as he was removing the gun, did you know that you could just pull the pin out, as opposed to struggling with the video with the vice and the other tools? But we don't believe it can be even arguable or reasonable to go through a sham of a video, which perhaps the court saw, when the thing just pulls apart very, very easily. I see that. I'm sorry, Your Honor? It helps you how to say that it just pulls apart easily. Because it was shams. Seeking to prosecute under A, which had never been done before. Sorry, what was a sham? Your Honor, the claim that they were trying to create a standard of easily reversible couldn't withstand any kind of testing scrutiny, and it was... But easily reversible, if you just had a bullet and you didn't even need any household tools, then what's your argument about definition of household tools? And indeed, it really should indicate that the weapon was sold in a way that may even have been designed to be easily convertible into an assault weapon. Well, Your Honor, we know that the police, after the SAFE Act passed, gave guidance to gun owners, if they don't want to register their guns, to change the barrels or change the hand grips, which is exactly what they did. So the state police did not think it was illegal to make modifications to the guns. Also, Lieutenant Sherman testified that. In essence, Lieutenant Sherman testified against what the Gun Investigation Unit was doing. So nobody believed that this particular gun, which is still sold in New York today, with very funny-looking grips... The fact that Lieutenant, whoever he was, didn't think that, doesn't mean the Gun Unit could not reasonably have thought that. Well, they knew they were changing the law, Your Honor, and we don't think it was reasonable to believe that Well, we only know on our particular rifle, it looked like he used a vice, he used a needle-nose pliers, and he may have used other tools, but, Your Honor, that video may have been a demonstration only. I'm not a handyman, but I have both those things in my basement. Some people don't, Your Honor. Well, I understand that, but you don't have household tools. That's objectively unreasonable to say so. They were unnecessary anyway. They were absolutely unnecessary, Your Honor, which is why this was not a viable standard. You've reserved some time for rebuttal, I believe. Yes, thank you. Good morning, Your Honors. May it please the Court, Eric DelPozo for the State Police Defendants. I'll start by answering Judge Kaplan's question to my colleague, Mr. LaRidola. The definition of firearm is in 265.003. Firearm means, and that's sub-E, an assault weapon, and that definition applies to the licensing statutes in New York. In part 400, Mr. Sanseviero indisputably sold an illegal assault weapon, no modifications or ease of reversibility required to an undercover officer. The assault weapon had two banned military style features. The first was a conspicuously protruding pistol grip, that's the photo at 224 on the record. So what makes these things illegal, that they have a certain style? That they have at least two of- These are stylistic features, right? They're not, Judge Jacobs. They are features that have no non-military purpose. They're essentially designed for combat. The pistol grip facilitates ease in firing. You can do it with one hand. Why wouldn't, oh, I see what you're saying. The flash suppressor, which could have fit on the threaded barrel that was indisputably there, helps to conceal the shooter's position. So- Hold on a second. What was on the barrel? What was removed to expose the threads? It was a muzzle break, a different kind of attachment that isn't on the list of- Is that the flash suppressor? It isn't. It's something else. But in this- The threads exist, presumably, to put on a flash suppressor. That's right. Had the weapon been sold with nothing on the tip, it would have been indisputably illegal, and it didn't lose that indisputable illegality simply through the- What did it take to remove what was on the tip? The video of the process is in the record. It was just a wrench. Investigator Frank used a wrench and screwed it off. So it's as if the threaded barrel had never left. It could have had a piece of tape over it or a thimble. It's the same result. And the threads would have accommodated not only a flash suppressor and a muzzle break, but a silencer, right? That's not in the record, and I'm actually not sure of that answer, Judge Kaplan. But we do have unrebutted evidence that the threads were capable of accepting a flash suppressor. The weapon was test-fired after that a couple of months, and it operated properly. So this was a fully functioning and illegal weapon. For the second characteristic, the fully collapsible stock, a pin had to be removed. And did you have to bang the weapon on the ground to remove the pin? Well, yes, Judge Livingston, but that would have been a third-band characteristic. The statute only requires two, so we're primarily relying in this appeal on the protruding grip and the threaded barrel. But there was a third-band characteristic that was exposed by Investigator Frank's knocking the weapon against the ground a couple of times and using a pair of pliers that took about four and a half minutes. So in fact, there were three-band characteristics, but you only need two under the statute. If this court has any question about the legality or the existence of probable cause, it can simply do what the district court did here, and that's hold that the officers are entitled to qualified immunity. And that conclusion makes particular sense given Mr. There's an exemption in the statute for dealers of firearms that applies, that bars liability for this particular sale by a firearms dealer. Now there's some ambiguity in the law. The exemption accepts assault weapons, but there's a separate definition in that statute we were talking about just before that includes assault weapons in the definition of dealer of firearms. That ambiguity would alone support qualified immunity. It would, and it's especially appropriate. Qualified immunity is especially appropriate when dealing with potentially unsettled questions of state law that could reasonably go either way. The federal right that this court would hold to be clearly established would be subject to defeasance by a state court if it held the next day that say the firearms, the dealer exemption in fact didn't apply to this conduct. We also think qualified immunity is appropriate here for the purposes of the doctrine. We want police and prosecutors to energetically enforce our laws banning assault weapons. These are dangerous weapons. As long as what they're doing is careful and their reading of the statute is facially valid, they can't be held liable in money damages. I'll talk briefly about the fabrication of evidence claim, which is sort of baked into the malicious prosecution. There was no sham here. There was no fabrication. Everything that investigator Frank did was above board and relayed in that video that's in the record and that the grand jury saw in the related presentation. Is it possible to fabricate evidence in a way that is not concealed? You just, you convert this gun into an assault weapon and you don't conceal it. But is that not manufacturing evidence anyway? It wouldn't be, Judge Jacobs, if the fact finder, in this case the grand jury, saw exactly what you were doing. Now you might lose on the merits if the grand jury thinks that those modifications were too extreme or that the weapon wasn't sold in a state that would make it an illegal weapon under the law, but you haven't. You are not fabricating evidence if what you do is not designed to deceive fact finders. That's right, Judge Jacobs, you are simply offering evidence and showing your work. And if this court has no other questions, I thank you. Thank you. Good morning, Robert Vanduweck for the county municipalities. This is a joint investigation between the, primarily with the state and with Nassau County. And we believe that DA, District Attorney Rice and her activity was classic prosecutorial conduct where she evaluated the evidence presented by the state. It's that 40 page affidavit by the Chief Investigator Frank, where he says what happened and that this was an illegal sale. She digested that with her deputies and determined to impanel a grand jury. There was a grand jury impanel, but as far as Mr. Sansevero is concerned- Would you concede that the decision to begin criminal prosecutions under a statute that had not sustained one before could be a political decision on the part of a prosecutor? Yes. Let me see if I understand you, Judge, I'm having a little trouble hearing. What was your question exactly? My question is, do you concede that a decision to begin criminal prosecutions under a statute that had never really been enforced before is a political decision on the part of a prosecutor? A critical decision on behalf, yes. Political. Political, yes. Politics, there's no doubt that, quite frankly, ADDA Rice, who is now Congresswoman Rice and what have you, was a strong advocate regarding weapons, especially concealed weapons and especially assault weapons. This thing was being debated and is still being debated. Her testimony and depositions was not that she wanted to change the law emphatically. She said she wants to enforce the law as it was written and intended. And she was also advocating for the Attorney General to also come on board and issue an opinion that would be used throughout the state. But she was, politics always enters into these things, there's no doubt about it. And especially when you're dealing with weapons. And in this particular case, you're dealing with a weapon which is, quite frankly, easily converted. If you look at that video, it's a wonderful video. And besides his affidavit of 40 pages and all, he shows that rifle, and this is the state, and we were operating and using the state's evidence, was pinned to begin with. And as Mr. Frank said, he knows of no military use for a pin or a military weapon that's pinned or a police or what have you. Mr. VanderWeg, almost any action by an elected executive branch person, or persons employed or appointed by that person, could be characterized in one degree or another as political. No doubt about it, Your Honor. And if political content to a decision by such a person was relevant to the issue of qualified immunity, we'd effectively abrogate the doctrine. It could, yes. In a very broad. Yes. Range of applications. Isn't that right? Yes, I agree with you, Judge Caput. It is our belief that Judge Wechsler was eminently correct in dismissing, he uses qualified immunity quite often, we believe that it's probably absolute immunity. But one way or the other, the defendants enjoy immunity, the county defendants, and the decision should be affirmed. Thank you. Thank you. We'll hear rebuttal. Your Honors, this was not just political, it was also revenge. TNT Gunnery had a $2 million judgment against the DA. All other charges were dismissed against every other gun store. That goes towards the malice issue. And Your Honors, they could change that gun after sale by soaring the barrel too short, or by making it fully automatic, or all the things discussed in the Staples v US case, but that will never make intent at the time of sale. My client had intent to follow the law, had the ATF in there regularly, had police shopping there regularly, and was always found to be in full compliance as with the other stores. I'm not bringing them into this, but we asked everyone involved in this case. If a prosecutor decides that there is a public need to enforce more harshly a law that's on the books, that is a political decision. And as for reasons that Judge Kaplan pointed out, it's really very difficult to say that there's something wrong with the prosecution that is designed to implement policy and political goals. But there were these curious facts, Your Honor, like omitting the word intent from the Penal Law 265 charge. We asked Theresa Corrigan why she omitted the word intent. Intent is an element of the disposition of a firearm. She didn't know. We saw it in the draft version properly done, but in the version that went to the grand jury, they omitted the word intent. And that would satisfy the Staples problem of modifying the gun after sale. Stew Sanseviero had no intent to sell anything illegal. He's a retired police officer. He would, none of these stories- Your view would be that presumptively any retired police officer is incapable of criminal behavior. There'd be no reason to sell it over the counter, Judge. These were stores operating in the light of day. There was no reason to videotape them. There was no reason for all of the show. They could have gone in any day, picked one off the shelf, and said that was illegal. But they had to create the probable cause by modifying the gun after sale. And the reasonableness has to be measured at the time of the investigation beginning or at the time of sale. When it was sold, it was sold in a form that would allow its easy conversion. That would be negligence, Your Honor. If they're saying that the 15 of the- It might be negligence or it might not. Well, 15 of the 43 guns were the ones they claimed collapsed. They bought 43. We know that they were really trying to go after the per se statute. That's why they went to Dick's and sporting goods stores and bought all the fixed rifles. That was the goal of the case, and that's what Tom Shellhammer, who's essentially a whistleblower. And we're really diminishing the good faith of Tom Shellhammer and Nancy Hapik, the people that stopped this from going forward. Really, by not supporting the changes she was trying to make. But I just want to add, we asked all of the prosecutors and the police. Frank knew about Staples. He was involved in the first email that went to Richard Aborn of Handgun Control. If there's an exemption for gun stores, we never heard how they got around it. We asked them, how could you get around it? They're exempt. You could saw the barrel off and it would still be legal for TNT to possess, because they're dealers in firearms. We never got an answer. This was one of the unresolved fact questions below. Thank you, Judge. We will reserve decision, and at this time we'll hear